FILED

FEB 12 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

# FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 08-17578-B-13
)
Bryan M. Thissen and ) DC No. MHM-1
Gisele Thissen, )
)
Debtors. )
)

**MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTION
TO CONFIRMATION OF CHAPTER 13 PLAN**

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee (the "Trustee").

Peter L. Fear, Esq., appeared on behalf of the debtors, Bryan M. Thissen and Gisele Thissen (the "Debtors").

     The Trustee objects to confirmation of the Debtors' chapter 13 plan (the "Plan") on the grounds that the Debtors have miscalculated the amount of disposable income which must be paid to unsecured creditors (the "Objection"). There are no disputed issues of fact. This decision turns upon the statutory construction of 11 U.S.C. § 707(b)(2)(A)(iii)(I), which allows the Debtors to deduct from their gross income payments "contractually due to secured creditors." The fair market value of the Debtors' residence is less than the amount owed to the holder of the first trust deed. The Debtors want to deduct from their gross monthly income the payments they had been making to the holders of two wholly unsecured junior trust deeds. For the reasons set forth below, the Objection will be sustained.

1     This memorandum contains findings of fact and conclusions of law required by
2 Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.  The
3 court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 1325[1]
4 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of
5 California.  This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(L).

6 **Background and Findings of Fact.**

7     Bryan and Gisele Thiessen filed their chapter 13 petition on November 21, 2008.
8 With their petition, they filed the required schedules of assets and liabilities.  Schedule A,
9 for real property, shows ownership of a single family residence located on North Sandrini
10 Avenue in Fresno (the "Residence").  Schedule D, for secured claims, shows that the
11 Residence is subject to a first deed of trust in favor of Countrywide Home Loans
12 ("Countrywide") in the amount of $417,000.  The Residence is also subject to a junior
13 deed of trust in favor of JPMorgan Chase, formerly Washington Mutual Bank ("Chase")
14 in the amount of $110,886.30, and another junior deed of trust in favor of GE Money
15 Bank/Green Tree ("Green Tree") in the amount $40,159.93 (the "Junior Trust Deeds").[2]
16 Schedule A shows the Residence as having a value of $300,000, which is less than the
17 amount owed to Countrywide secured by the first deed of trust.

18     With their petition, the Debtors also filed Official Form 22C entitled "Chapter 13
19 Statement of Current Monthly Income and Calculation of Commitment Period and

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Publ. L. 109-8, Apr. 0, 2005, 119 Stat. 23.

[2] The Debtors' schedules are substantially accurate.  Countrywide Home Loans Servicing, L.P., filed a proof of secured claim in the amount of $419,645.63 on January 15, 2009. JPMorgan Chase has filed a proof of claim in the amount of $113,497.35 and GE Money Bank/Green Tree filed a proof of claim in the amount of $41,280.07.  The schedules do not disclose which Junior Trust Deed was recorded in which order of priority.  Since they both appear to be wholly unsecured, their priority is not relevant to this decision.

Disposable Income" ("Form 22C"). Form 22C is also referred to generally as Form B22C or the Means Test. In chapter 13, Form 22C is used to calculate, *inter alia*, how many years a debtor must pay into a chapter 13 plan (the "applicable commitment period"), and how much "disposable income" a debtor must pay to his/her unsecured creditors over the term of the plan. Those calculations are based upon the debtor's pre-petition current monthly income ("CMI") and allowable deductions. On Form 22C, lines 14, 15 and 16 show that the Debtors' CMI is $19,005.18. Their annualized CMI is $228,062.16, which is substantially greater than the median family income applicable to the Debtors in California. The "applicable commitment period" for their chapter 13 Plan is therefore five years and their "disposable income" for purposes of confirming the Plan must be determined under § 1325(b)(3).

Part IV of Form 22C is designed to calculate disposable income under § 1325(b)(3). In Part IV, the Debtors are permitted to take deductions from their CMI pursuant to Internal Revenue Service standards and other necessary expenses. Sub-part C is entitled "Deductions for Debt Payment." Line 47 has a space for listing "Future Payments on Secured Claims." The preamble to line 47 defines the payments that can be listed on line 47 in pertinent part:

> For each of your debts that is *secured by an interest in property* that you own, list the name of creditor, identify the property *securing the debt*, state the Average Monthly Payment, and check whether the payment includes taxes or insurance. The Average Monthly Payment is the total of all amounts *scheduled as contractually due to each Secured Creditor* in the 60 months following the filing of the bankruptcy case, divided by 60. . . . (Emphasis added.)

On line 47 of Sub-part C, the Debtors deducted a payment to Countrywide for the first mortgage on their Residence in the amount of $3,439.08. They also deducted payments to Chase and Green Tree on their Junior Trust Deeds in the amounts of $974.04 and $384.39, respectively for a total of $1,358.43. At the end of Part IV, line 52, the Debtors claim "Total of all deductions from income" in the amount of $15,953.62. On line 56, the Debtors also claim a "Qualified retirement deduction" in the amount of $2,540.50. After taking these deductions, the Debtors report on line 59 that their

1 "Monthly Disposable Income" is $511.06.

2 The Plan incorporates the calculation of monthly disposable income from Form 22C. At Section 1 of the Plan, the Debtors indicate that because "annualized current monthly income is greater than applicable median family income, projected monthly disposable monthly income [is taken] from Line 59 [of Form 22C]." As referenced above, this is stated to be $511.06. Multiplying this by the required 60-month commitment period gives a "projected disposable income" over the life of the Plan in the amount of $30,663.60.

The Trustee objects to the Debtors' calculation of disposable income because it includes deductions for payments relating to the two Junior Trust Deeds. He contends that the "projected disposable income" should be $1,869.49 per month, which calculates over the 60-month "applicable commitment period" to $111,425.40.

> If the Green Tree and Washington Mutual payment is [sic] not deducted in Line 47, then the Monthly Disposable Income on Line 59 is $1,869.49, which over 60 months would yield for the unsecured creditor(s) the sum of $111,425.40. ($709.61 x 60 = $112,169.40 - $744.00 (attorney fees) = $111,425.40). (Trustee's Objection at p.2.)

The Plan provides for monthly payments to the Trustee in the amount of $1,200 over the 60-month commitment period.[3] The Plan at paragraph 3.20 (Class 7) provides that general unsecured claims will receive a 15% dividend on their allowed claims. General unsecured creditors are defined in paragraph 3.20 to mean claims "that are *not secured* by property belonging to Debtor, . . . including the under-collateralized portion of secured claims not entitled to priority." (Emphasis added.) The Plan shows at paragraph 3.20 that the Debtors expect their general unsecured claims to be approximately $242,772.71, which includes all of the "unsecured debt" owed on the Junior Trust Deeds.[4]

---

[3] Not all of the monthly payment goes to the unsecured creditors. The unsecured creditors must receive the "projected disposable income." The monthly payment includes payments for the Debtors' automobile in the amount of $462.18 and the Trustee's fees.

[4] The Debtors' Schedule F lists general unsecured claims totaling $91,726.48. The debt to Chase and Green Tree are listed in Schedule D as $110,886.30 and $40,159.93, respectively.

The 15% dividend provided for in the Plan will result in a payment of $36,415 to general unsecured creditors. This is significantly less than the $111,425.40, which the Trustee contends general unsecured creditors should receive if the Junior Trust Deed payments are not deducted on Form 22C, line 47.

The Debtors have filed two motions to value the Residence and determine the secured status of the Junior Trust Deeds based on the well recognized authority of *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 9th Cir. BAP 1997) (the "Lam Motions"). In support of each Motion, the Debtors filed a declaration stating that the Residence is worth $300,000, which is less than the senior lien to Countrywide. In both Motions, the Debtors request an order that values the Residence "at $300,000.00 for the purposes of treating the claim of [Chase and Green Tree] as an unsecured claim in the Plan and for the purpose of removing the lien of [Chase and Green Tree] pursuant to the decision of *In re Lam*"[5]

**Issue.**

The sole issue presented here is whether the Debtors may deduct on Form 22C, line 47, for purposes of calculating projected disposable income, payments that were contractually due to the holders of the wholly unsecured Junior Trust Deeds.

**The Applicable Law.**

Bankruptcy Code § 1325(b)(1) states in pertinent part that if the chapter 13 trustee or an unsecured creditor objects to plan confirmation, then the court may not approve the plan unless, as of the effective date of the plan, either unsecured creditors get paid in full or:

///

---

These total $242,772.71, the same figure used in paragraph 3.20 of the Plan.

[5]Both Lam Motions were heard on the same calendar with this Objection. Neither Lam Motion was opposed by the affected creditor and both Motions were granted, subject to the Debtors' ability to confirm a Plan, upon the court's finding that the Junior Trust Deeds are wholly unsecured. In lieu of opposing the Lam Motion, Chase filed a joinder to the Trustee's Objection.

5

> [T]he plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan. § 1325(b)(1)(B) (emphasis added).

For a family with annualized CMI above the applicable median, the term "disposable income" is defined in §§ 1325(b)(2) & (3), which specifically incorporate the deductions allowed in § 707(b)(2):

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended -
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor . . . .
>
> . . .
>
> (3) Amounts reasonably necessary to be expended under paragraph (2), . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than - [the applicable median family income].

In this case, because the Debtors' annualized CMI is greater than the applicable median family income, their "reasonably necessary" deductions from income must be determined with reference to § 707(b)(2). The deduction of payments to "secured creditors" is allowed pursuant to § 707(b)(2)(A)(iii), which states in pertinent part:

> The debtor's average monthly payments on account of *secured debts* shall be calculated as the sum of -
>
> (I) the total of all amounts scheduled as *contractually due to secured creditors* in each month of the 60 months following the date of the petition. (Emphasis added.)

**Analysis.**

This decision turns upon the statutory construction of § 707(b)(2)(A)(iii)(I), which allows the Debtors to deduct from their gross monthly income payments "contractually due to secured creditors." Resolution of a dispute over the meaning of a statute begins with the language of the statute itself. Where statutory language is plain, "the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms. . . . Courts must give meaning to every clause and

word of a statute. . . . *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872 (9th Cir. 2008) (citations omitted).

Under applicable Ninth Circuit law, if the Junior Trust Deeds are wholly unsecured, they may be treated as general unsecured claims in the Plan. Thus, the Debtors would not be required in their Plan to make regular mortgage payments to Chase and Green Tree on account of their Junior Trust Deeds. See, *Zimmer v. PSB Lending Corporation (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *In re Lam*, 211 B.R. at 36. Indeed, as noted above, the Debtors' Plan already counts the debts attached to the Junior Trust Deeds as general unsecured claims. *(See* footnote 4, supra.)

The distinction between a "secured" claim and an "unsecured" claim is defined in § 506(a)(1) as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. . . .

Section 506(a) applies in an individual bankruptcy case under chapter 13. *Nobleman v. American Savings Bank*, 508 U.S. 324, 328, n.3, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

Section 707(b)(2)(A)(iii)(I) uses the term "secured creditors." The term "creditor" is defined in § 101(10) as an "entity that has a claim against the debtor . . . ." The statutory definition of "creditor" is intended to include "anyone holding a claim . . . unless the express language or the context require additional qualifications to be met. Such limitations may relate to the amount, nature or *security status* of the debt . . . . 2 *Collier on Bankruptcy*, (15th Ed. Revised), § 101.10 at 101-74 (emphasis added). The term "creditor" as used in § 707(b)(2)(A)(iii)(I) is specifically qualified by the term "secured." By definition, the term "secured creditor" as used in § 707(b)(2)(A)(iii)(I) is analogous to the holder of a "secured claim" as that term is defined in § 506(a)(1). A creditor cannot be a "secured creditor" unless it holds a claim that is at least partially secured by some

7

property of the estate with some value.

The dispute here is over the meaning of the phrase "amounts scheduled as contractually due to secured creditors." The Trustee argues that because the value of the Residence is less than the amount owed to the senior lienholder, Countrywide, then the holders of the Junior Trust Deeds, Chase and Green Tree, are not "secured creditors" within the meaning of subsection § 707(b)(2)(A)(iii)(I). The Trustee's Objection is bolstered by the fact that the Debtors have filed and successfully prosecuted the two Lam Motions referred to above. (*See* footnote 5, *supra*.)[6] The court finds this argument persuasive. It is well settled in the Ninth Circuit that a totally unsecured mortgage against real property is not a "secured claim" for any purpose in chapter 13. *In re Zimmer*, 313 F.3d at 1223. In *Zimmer*, the Ninth Circuit affirmed the rule first stated in *In re Lam*, that a claim for repayment of a loan is not a "secured claim" where the creditor's junior deed of trust is totally unsecured. *Id.* "Under the Bankruptcy Code, 'secured claim' is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim."' *Id.* It follows then that the holder of a totally unsecured mortgage against real property is not a "secured creditor" for any purpose in chapter 13 as well.

The Trustee supports his Objection with case law interpreting chapter 13 eligibility under § 109(e). The Ninth Circuit considered the effect of undersecured debt on chapter 13 eligibility in *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975 (9th Cir. 2001). In that case, the Ninth Circuit held that the unsecured portion of an undersecured debt must be counted as unsecured for purposes of chapter 13 eligibility under § 109(e). By analogy, the Trustee argues that the unsecured portion of undersecured debt in chapter 13 should also be treated as unsecured for the purposes of determining disposable income under § 1325(b)(3).

The court declines the Trustee's invitation to decide this issue based on principals

---

[6]The court is not suggesting here that a debtor must prosecute a Lam motion before the junior lien on his property can be determined to be wholly unsecured. Generally, as here, the inquiry regarding a creditor's secured status should begin with the debtors' schedules.

of chapter 13 eligibility. The term "secured claim" is defined by statute (§ 506(a)) and the concept of a "secured creditor" has already been defined in the context of a wholly unsecured mortgage by both the Bankruptcy Appellate Panel (*In re Lam*) and the Ninth Circuit (*In re Zimmer*). The § 109(e) analogy is not necessary to support this decision.

The Debtors argue that the existence of the Junior Trust Deeds alone make Chase and Green Tree "secured creditors" for purposes of calculating disposable income. However, the BAP expressly rejected the "unsecured lien" theory in *Lam*.

> An analysis of the state law "rights afforded a holder of an unsecured "lien," if such a situation exists, indicates these rights are empty rights from a practical, if not a legal standpoint. A forced sale of the property would not result in any financial return to the lienholder, even if a forced sale could be accomplished where the lien attaches to nothing. Nothing secures the "right" of the lienholder to continue to receive monthly installment payments, to retain the lien until the debt is paid off, or the right to accelerate the loan upon default, if there is no security available to the lienholder to foreclose on in the event the debtor fails to fulfill the contract payment obligations.

*In re Lam*, 211 B.R. at 40.

The Debtors also argue that the payments to Chase and Green Tree were "contractually due" on the date the petition was filed. The Debtors cite bankruptcy court cases that have allowed a deduction for payments contractually due at the commencement of the case even though the collateral was subsequently surrendered through the chapter 13 plan. The court takes no issue with this argument - there appears to be no dispute that Chase and Green Tree had valid enforceable contracts which called for "contractually due" monthly payments. However, the Trustee's Objection focuses on the term "to secured creditors," which immediately follows and modifies the term "contractually due." The Debtors cannot parse the statute and disregard the limiting effect of the term "to secured creditors." It does not matter what payments were "contractually due" (indeed most of the Debtors' debts were "contractually due" in one form or another) if those payments were not due to "secured creditors."

The Debtors argue, "the appropriate paradigm for considering what payments should be deducted on line 47 of Form B22C (and line 42 of Form B22A) is the

9

'snapshot' versus 'forward-looking paradigm,'" citing the Ninth Circuit's recent decision in *In re Kagenveama*, 541 F.3d 868 (Debtors' Memorandum of Points and Authorities at pp. 5 & 6).[7] However, the "snap-shot" analysis does not transform the Junior Trust Deeds into "secured claims." As the BAP observed above in *In re Lam*, if the Residence had been sold on the day the petition was filed, the date of the proposed snap-shot, there would still have been nothing - not one penny - from that sale to pay Chase or Green Tree. At the commencement of the case, the Junior Trust Deeds attached to nothing of any value. *In re Lam*, 211 B.R. at 40.

Finally, the Debtors argue that the Trustee's interpretation of § 707(b)(2)(A)(iii)(I) will lead to "absurd consequences" in chapter 7. A debtor in chapter 7 must file an Official Form 22A, the chapter 7 "means test," which is similar to Form 22C. On Form 22A, a debtor must list payments due to secured creditors for purposes of determining whether the case is an abuse of chapter 7 within the meaning of § 707(b)(1). The Debtors here argue that the "chapter 7 abuse" question will turn on the valuation of collateral for every listed secured claim, potentially transforming a summary proceeding into a morass of litigation.

Again, the court declines the Debtors' invitation to journey beyond the scope of the narrow issue presented here, whether the holder of a wholly unsecured mortgage can be counted as a secured creditor for purposes of calculating a chapter 13 debtor's disposable income. The potential chapter 7 issues are not before the court. Those issues

---

[7]The Debtors cite two unpublished bankruptcy court decisions for the proposition that Form 22C should be a "snap-shot" of their financial condition on the day they filed their petition *(In re Allen*, 2008 WL 451053 (Bankr. D. Kan. 2008) and *In re Oliver*, 2006 WL 2086691 (Bankr. D. Or. 2006)). Neither of those cases are applicable here. They both relate to the deduction for pre-petition car payments. In *Allen*, the creditor was partially secured and the chapter 13 plan proposed to "cram-down" the claim to the value of the car. The car payments through the plan would be significantly less than the payments that had been deducted on Form 22C. In *Oliver*, the debtors proposed to surrender their car in the confirmed plan and stop making the payments they had deducted on Form 22C. In both of those cases, there was some value to secure the creditors' claims. Here, there is no dispute that the Junior Trust Deeds are wholly unsecured.

would properly be raised by the U.S. Trustee or a chapter 7 trustee who are not parties to this proceeding. It would be inappropriate for this court to opine, or even suggest what effect this ruling might have in a chapter 7.

**Conclusion.**

Based on the foregoing, the court is satisfied based on the Debtors' schedules and the subsequent Lam Motions, that the Junior Trust Deeds are wholly unsecured. It follows therefore that Chase and Green Tree, the holders of those Junior Trust Deeds, are not "secured creditors" within the meaning of § 707(b)(2)(A)(iii)(I). The court concludes that the Debtors may not deduct payments contractually due to holders of wholly unsecured mortgages on Form 22C for purposes of determining the "projected disposable income" which must be paid to unsecured creditors through their chapter 13 Plan. The Trustee's Objection will be sustained.

Dated: February __12__, 2009

W. Richard Lee
United States Bankruptcy Judge